IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-03089-NRN

BEVERLY J. DARROW,

Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of Social Security,

Defendant.

**OPINION AND ORDER**

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff Beverly J. Darrow is not disabled for purposes of the Social Security Act. (AR[1] 24.) Ms. Darrow has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a U.S. Magistrate Judge under 28 U.S.C. § 636(c). (Dkt. #10.)

**Standard of Review**

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as

---

[1] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. (Dkt. ##9, and 9-1 through 9-8.)

adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271-72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## **Background**

At the second step of the Commissioner's five-step sequence for making determinations,[2] the ALJ found that Ms. Darrow "has the following severe impairments: posttraumatic stress disorder [("PTSD")], generalized anxiety disorder, major depressive disorder, adjustment disorder, insomnia, and pain disorder." (AR 12.) The ALJ found Ms. Darrow's hypertension and vertigo to be non-severe impairments. (AR 13.) He also determined that Ms. Darrow had no medically determinable impairment of fibromyalgia, noting that she has never been diagnosed with this disorder, "and no provider has ever excluded other causes for her purported claim." (*Id.*)

---

[2] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

2

The ALJ then determined at step three that Ms. Darrow "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the regulations. (AR 14.) He found that Ms. Darrow's impairments caused a mild restriction in activities of daily living, moderate difficulties in social functioning and concentration, persistence, or pace, and noted that Ms. Darrow had no episodes of decompensation. (AR 14-15.) The ALJ also determined that Ms. Darrow did not have a medically documented history of chronic affective disorder or an impairment resulting in the complete inability to function independently outside her home. (AR 15-16.)

Because he concluded that Ms. Darrow did not have an impairment or combination of impairments that meets the severity of the listed impairments, the ALJ found that Ms. Darrow has the following residual functional capacity ("RFC"):

> . . . [Ms. Darrow] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot climb ladders, ropes, or scaffolds, and she should have no exposure to hazards. The claimant can understand, remember, and carry out no more than simple tasks and instructions. The claimant should not be subject to production-rate pace work, such as assembly line work. The claimant should not perform team or tandem work, and she cannot perform customer-service based work.

(AR 16.)

The ALJ found that Ms. Darrow was unable to perform any past relevant work. (AR 22-23.) Ms. Darrow, at 55, was found to be an individual of advanced age on the alleged disability onset date. (AR 12, 23.) The ALJ concluded that, considering Ms. Darrow's age, education, work experience, and RFC, "there are jobs that exist in significant numbers in the national economy" that Ms. Darrow could perform. (AR 23.) Based on testimony of a Vocational Expert ("VE"), the

ALJ found Ms. Darrow could perform other work such as a kitchen helper, hospital cleaner, and floor waxer. (AR 23-24.) Accordingly, Ms. Darrow was deemed not to have been under a disability from the alleged onset date of May 29, 2013. (AR 24.)

Ms. Darrow now argues that the ALJ improperly weighed the opinion evidence of consultative psychologist Dr. Immaculate Wesley. (Dkt. #13.)

## Analysis

Ms. Darrow argues that the ALJ committed a reversible error by giving examining psychologist Dr. Wesley's opinion minimal weight. The Court disagrees for reasons set forth below.

**The ALJ's Weighing of Opinion Evidence**

Dr. Wesley examined Ms. Darrow on November 19, 2014, in Alamosa, Colorado. (AR 309.) Ms. Darrow had driven there from here home in South Fork, Colorado, about 47 miles away. (*Id.*) Ms. Darrow reported that she suffered from chronic pain, and she informed Dr. Wesley that "she thinks she has fibromyalgia, diverticulitis, hypertension." (AR 311.)

Dr. Wesley's mental status examination (AR 311-12) revealed the following: Ms. Darrow sobbed heavily during the examination, although her speech was "of normal rate, rhythm, and volume." Her affect was anxious and extremely depressed, although her "[t]hought processes were logical and coherent," her "[t]hought content is free of delusions," and she exhibited "no disorders of perception." Ms. Darrow denied homicidal ideation, but admitted to suicidal ideation without intent, and a history of two past suicide attempts. Ms.

4

Darrow stated she had problems falling and staying asleep. As to her immediate memory, she recalled three out of five items with one bizarre intrusion and delayed memory, and "one out of five with another bizarre intrusion and she appeared to have a panic attack[.]" Ms. Darrow's judgment was good, and her insight was fair. She was "well oriented to all spheres" and her abstraction ability was adequate. She could spell the word "world" backwards, but "cannot even attempt serial sevens," and she could "perform six digits forward, but only three backwards." The latter Dr. Wesley deemed a "red flag indicative of severe problems with concentration and attention that could be of an organic nature." Dr. Wesley also found that Ms. Darrow had a global assessment of functioning ("GAF") score of 40. Dr. Wesley determined that Ms. Darrow exhibited multiple symptoms of major depressive order, PTSD, and avoidance.

Dr. Wesley concluded that Ms. Darrow suffers from PTSD, depression, and extreme anxiety, such that her "abilities as related to basic work activities appear extremely impaired and most likely precluded." (AR 313.) While her understanding was "adequate," her memory, sustained concentration, and persistence and pace were impaired, and her social interaction and adaptation was "extremely impaired."

The ALJ gave Dr. Wesley's opinion "minimal weight, as it is based on findings not seen in any other record and is largely based on uncorroborated subjective allegations from a one-time examination." (AR 20.) He noted that Dr. Wesley's opinion "essentially has no longitudinal support found in the record." (*Id.*) In support, the ALJ cites August 2015 records from Dr. Thomas Firnberg at

5

the San Luis Valley Behavioral Health Group which indicate that Ms. Darrow's thought processes were linear and goal directed; that Ms. Darrow denied suicidal or homicidal ideation; that she was oriented with fair to good insight and judgment; and that her cognition, memory, and abstraction abilities were grossly intact. (AR 20-21, 333-34.) The ALJ also pointed to Ms. Darrow's "documented retained function, her desire and attempts to obtain work, and her good response to treatment," which "completely undercut[s] any support for Dr. Wesley's opinion." (AR 21.)

In contrast, the ALJ gave "significant weight" to the opinion of non-examining State Agency medical consultant Mark Suyeishi, Psy.D. (AR 20.) Dr. Suyeishi opined that Ms. Darrow had moderate limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace; and that while Ms. Darrow could perform simple tasks and instructions, she should not perform close work with others. (AR 20, 70-71.)

**Legal Standards**

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)). The ALJ must "give consideration to all the medical opinions in the record" and "discuss the weight he assigns to them." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal quotation marks omitted). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your

impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The applicable regulations governing the consideration of medical opinions distinguish among "treating" physicians, "examining" physicians, and "nonexamining" (or "consulting") physicians. *See* 20 C.F.R. § 416.927(c).

Generally, "the opinions of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim." *Sorenson v. Bowen*, 888 F.2d 706, 711 (10th Cir. 1989). *See also Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (quoting 20 C.F.R. § 416.927(d)(2)) ("The treating physician's opinion is given particular weight because of his or her 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'").

The evaluation of a treating source's opinion is a two-step process. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). "Such an opinion must be given controlling weight if it is well-supported by

medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.*

Second,

> Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned.

*Id.*

Dr. Wesley is not a treating physician, and so his opinion is not given controlling weight. However, the ALJ must consider **all** of the following factors in evaluating opinion evidence:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Allman v. Colvin,* 813 F.3d 1326, 1331–32 (10th Cir. 2016). Neither the regulation nor the Court require a factor-by-factor recitation, but the ALJ's findings must be "sufficiently specific to make clear" the weight assigned to the source opinion and the reasons for that weight. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks omitted).

**Discussion**

Ms. Darrow argues that the ALJ's reasons for giving minimal weight Dr. Wesley's opinion are insufficient, self-contradicting, and unreasonable for several reasons.

Ms. Darrow claims that the ALJ's rejection of Dr. Wesley's opinion as "largely based on uncorroborated subjective allegations" is itself uncorroborated and subjective. She contends that the ALJ impermissibly substituted his assessment of Ms. Darrow's credibility as to her "subjective allegations" for that of Dr. Wesley.

Ms. Darrow relies heavily on *Spomer v. Berryhill*, No. 16-cv-03024-MSK, 2018 WL 1444207 (D. Colo. Mar. 23, 2018). There, Chief Judge Marcia S. Krieger determined that the ALJ did not apply the correct legal standard governing the evaluation of a non-treating physician's opinion. *Id.* at *7. The examining physician evaluated the claimant using various procedures, but the ALJ largely rejected his findings because the ALJ determined that the claimant had "credibility concerns." *Id.* at *5. Judge Krieger noted that "[r]ather than evaluating medical opinions based on established legal standards, the ALJ first decided whether Ms. Spomer was believable and then let that perception drive the outcome of the matter." *Id.*

First, Judge Krieger explained the difference between "signs," which, in the psychiatric/psychological context, "are demonstrable phenomena indicating psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception[,]" and "symptoms," which are "observations or descriptions made by a claimant with regard to an impairment or how the impairment affects him or her." *Id.* at *6. She then went on to state,

> A claimant's credibility is pertinent only as to statements about his or her symptoms, and then only to assess the intensity, persistence, and functional limitations of such symptoms. 20 CFR §§ 404.1529 & 416.929. The credibility determination is not a free-

9

> form judgment of whether the claimant is truthful in general, but instead requires a structured consideration of the relationship between the objective medical facts and the subjective symptoms. *See* SSR 96–7p, 1996 WL 374186 at *4–*5.1 Accordingly, an ALJ is not free to substitute his/her assessment of a claimant's credibility as to symptoms in weighing the medical professional's assessment of signs. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (citing *Morales v. Apfel*, 225 F.3d 310, 317–18 (3d Cir. 2000)).

*Id.*

Ms. Darrow argues that in the present case, the ALJ similarly and improperly substituted his credibility opinion for Dr. Wesley's professional judgment.

However, the Court finds this case distinguishable from *Spomer*. There, the ALJ's entire explanation for giving the examining physician's opinion little weight is as follows: "Dr. Pendleton based this opinion on a one-time, two-day exam in a setting with the claimant who has credibility concerns." *Id.* at *5. The Court is unsurprised that Judge Krieger found this trivial analysis lacking. Here, in contrast, the ALJ did not opine on the general truthfulness of Ms. Darrow's subjective complaints. Rather, he only concluded that they were uncorroborated by the objective medical evidence, and he identified medical records that were inconsistent with both Ms. Darrow's complaints and Dr. Wesley's related findings. (AR 20-21.) Furthermore, in its response, the Commissioner points to specific longitudinal treatment records that support the ALJ's determination and undermine Dr. Wesley's findings. (Dkt. #14 at 7; *see also* AR 334, 338, 341-42, 345-46, 349-50, 353-54, 358, 363.) The ALJ also pointed out that Ms. Darrow's medical records indicated that she responded positively to treatment. The Court must bear in mind that "[t]he possibility of drawing two inconsistent conclusions

10

from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence[,]" and the Court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084. Thus, the ALJ's finding that Dr. Wesley's opinion was inconsistent with the other relevant evidence is supported by substantial evidence, and it was not an error to give the opinion less weight. *See* 20 C.F.R. § 404.1527(c)(4).

Moreover, the ALJ explained that Dr. Wesley's conclusion that work activity for Ms. Darrow was "extremely impaired," if not "likely precluded," due to her impaired memory and concentration, her "reportedly impaired" persistence and pace, and her extremely impaired social interaction and adaptation, was undermined by her desire and attempts to obtain work. It is also undisputed that Ms. Darrow's previous long-term employment only ended when the attorney she worked for retired. She claimed to enjoy this work, and unsuccessfully looked for similar employment. The Court can find no fault with the ALJ's conclusion that the mere fact "[t]hat [Ms. Darrow's] work ended and she was unable to locate another job in the mountains of Colorado does not make her disabled." (AR 20.)

Next, Ms. Darrow's argument that the ALJ impermissibly discredited Dr. Wesley's opinion because it was from a "one-time" examination, while giving greater weight to the non-examining medical consultant, is equally unavailing. While the ALJ was required to consider the length of the treatment relationship and the frequency of examination when evaluating opinion evidence, this factor is

11

not dispositive. The ALJ must also address the degree to which the physician's opinion is supported by relevant evidence, as well as the consistency between the opinion and the record as a whole. The ALJ did so here, and found that Dr. Suyeishi's opinion was more consistent with the objective medical records than that of Dr. Wesley. This is a good reason to give Dr. Suyeishi's opinion greater weight. *See Covington v. Colvin*, 678 F. App'x 660, 665-66 (10th Cir. 2017) (finding the ALJ properly discounted consulting physician's opinion where he "cited three reasons for giving less weight to the opinion").

Finally, the Court rejects Ms. Darrow's claim that the ALJ's reasons for rejecting Dr. Wesley's opinions are vague and unconvincing. The ALJ discussed in detail the objective evidence regarding Ms. Darrow's PTSD, anxiety, and depression, and how it affected the functional restrictions. (AR 17-20.) He concluded that the records "do not warrant greater restrictions given that, aside from acute instances triggered by acute stressor, [Ms. Darrow's] mental status examinations do not note any ongoing cognitive deficits. Indeed, many of her mental status examinations are largely unchanged," with the "only real significant abnormal finding" coming from Dr. Wesley. (AR 18-19.) The ALJ also pointed out, among other things, that in September 2015, Ms. Darrow told her provider that her symptoms only mildly limited her activities, and two months later she was able to drive herself to the examination with Dr. Wesley, a 90-mile round trip. The Court will not reweigh this and other evidence cited by the ALJ.

## **Conclusion**

For the reasons set forth above, the Commissioner's decision is **AFFIRMED** and Petitioner's Complaint (Dkt. #1) is **DISMISSED**.

Dated this 4th day of March, 2019.

BY THE COURT:

_N. Reid Neureiter_
N. Reid Neureiter
United States Magistrate Judge